SOTO v DIRECTOR OF THE MICHIGAN DEPARTMENT OF
SOCIAL SERVICES

1. APPEAL AND ERROR—ADMINISTRATIVE LAW—REVIEW—STANDARD
   FOR REVIEW—AID TO DEPENDENT CHILDREN—STATUTES.

   The proper standard for review of an administrative decision
   which denies Aid to Dependent Children is whether the deci-
   sion is supported on the whole record by competent, material
   and substantial evidence (MCLA 400.56; MSA 16.456).

2. ADMINISTRATIVE LAW—SOCIAL SERVICES—RESIDENCY—CODE OF FED-
   ERAL REGULATIONS.

   The Federal standard of residence for social welfare, also used as
   a standard by the Michigan Department of Social Services is:
   (1) a resident is one who is living in the state voluntarily with
   the intention of making his home there and not for a tempo-
   rary purpose; (2) residency may not depend upon the reason for
   which the individual entered the state, except insofar as it may
   bear upon whether he is there voluntarily or for a temporary
   purpose; (3) residence is retained until abandoned, temporary
   absence from the state, with subsequent returns to the state, or
   intent to return when the purposes of the absence have been
   accomplished, does not interrupt continuity of residence; and
   (4) a child is a resident of the state in which he is living other
   than on a temporary basis (45 CFR 233.40[a] [1] [2] [1976]).

3. ADMINISTRATIVE LAW—SOCIAL SERVICES—REVIEW—SUBSTANTIAL
   EVIDENCE TEST.

   The substantial evidence test applies to the review of social
   services cases; such test requires evidence which a reasoning

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 659.
   79 Am Jur 2d, Welfare Laws § 107.
[2] 79 Am Jur 2d, Welfare Laws § 54.
[3] 2 Am Jur 2d, Administrative Law § 659.
[4, 8] 79 Am Jur 2d, Welfare Laws § 16.
[5] 79 Am Jur 2d, Welfare Laws § 15.
[6] 2 Am Jur 2d, Administrative Law § 399.
[7] 2 Am Jur 2d, Administrative Law § 416.
[9] 79 Am Jur 2d, Welfare Laws § 6.

mind would accept as sufficient to support a conclusion and consisting of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence.

4. ADMINISTRATIVE LAW—AID TO DEPENDENT CHILDREN—INTENT—TIMING—RESIDENCY—STATUTES.

The issues of intent and timing in establishing permanent residence in the state for the purposes of Aid to Dependent Children benefits, where the objective evidence indicates an intention to maintain only a temporary residence in the state and where it is not disputed that at some point in time permanent residence was established by the applicant, are difficult fact questions particularly suited for resolution by a trier of fact who has the opportunity to observe the demeanor of the witnesses (MCLA 400.56; MSA 16.456).

5. ADMINISTRATIVE LAW—AID TO DEPENDENT CHILDREN—RESIDENCY—SUBSTANTIAL EVIDENCE—STATUTES.

An administrative decision which denies Aid to Dependent Children based upon a finding that the applicant was not a resident of the state is proper where such finding is supported on the whole record by substantial evidence (MCLA 400.56; MSA 16.456).

6. ADMINISTRATIVE LAW—DUE PROCESS.

An administrative hearing is often conducted with a more flexible framework than a courtroom trial; nevertheless, due process considerations subject to some balancing of interests apply.

7. ADMINISTRATIVE LAW—AID TO DEPENDENT CHILDREN—REVIEW—MISSING DOCUMENTS—STATUTES.

The procedure used by an administrative law judge who conducts a full hearing into all matters relevant to a claim for Aid to Dependent Children benefits and hears substantial testimony regarding several documents not available at the time was proper where the judge indicated that the missing documents would be obtained, made part of the record, and also supplied to counsel, and where the record was left open for a period of time to allow for objections to such procedure were not made, and where inaccuracy, surprise, or other reasons indicating injustice are not shown (MCLA 400.56; MSA 16.456).

8. ADMINISTRATIVE LAW—RESIDENCY STANDARD—FEDERAL REGULATIONS—OUT-OF-STATE HOLDINGS—AID TO DEPENDENT CHILDREN—STATUTES.

Michigan does not impose a more restrictive residency standard than that authorized by Federal regulations when it uses the

degree of outside holdings as a guideline to ascertain if the subjective intention of an applicant for Aid to Dependent Children is to remain permanently in the state but does not make it a condition of eligibility that such out-of-state holdings be liquidated (MCLA 400.56; MSA 16.456).

9. CONSTITUTIONAL LAW—EQUAL PROTECTION—INVIDIOUS CLASSIFICA-
   TIONS—AID TO DEPENDENT CHILDREN—RESIDENCY REQUIRE-
   MENTS—STATUTES.

   No invidious classification is made by Michigan's residency requirement for eligibility for Aid to Dependent Children where a genuine intent to remain in Michigan and establish Michigan as one's residence is all that is required, where such requirement is not intended to prohibit the migration of needy persons, and where the result of such a requirement is to distinguish between residents and nonresidents rather than the creation of different classes of needy residents (MCLA 400.56; MSA 16.456).

Appeal from Van Buren, Meyer Warshawsky, J. Submitted December 9, 1976, at Lansing. (Docket No. 27531.) Decided January 6, 1977.

Epimenio Soto applied to the Berrien County Department of Social Services for Aid to Dependent Children. Benefits denied. Michigan Department of Social Services upheld the denial. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals. Affirmed.

Michigan Migrant Legal Assistance Project, Inc. (by *Alan S. Ells*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Thomas R. Wheeker* and *Robert N. Rosenberg,* Assistants Attorney General, for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and D. C. RILEY, JJ.

D. E. HOLBROOK, P. J. Plaintiff appeals as of

right a final order of the circuit court which affirmed a decision of a Michigan Department of Social Services administrative law judge. This decision, in turn, had held that plaintiff's initial application for Aid to Dependent Children (ADC), MCLA 400.56; MSA 16.456, was correctly denied on the basis that plaintiff was not a resident of Michigan at the time of application.

Plaintiff is a Mexican-American farm worker who apparently came to Michigan from Texas with his wife and three of his four minor children in June of 1974. Plaintiff had come to Michigan to secure employment as a fruit picker. Initially plaintiff secured such employment and secured residence on a farm in Berrien County.

Before coming to Michigan, plaintiff contends that he was suffering from an undisclosed illness. Plaintiff had sought treatment in Texas, but had not achieved any successful results. Plaintiff was unhappy with the physicians he consulted with in Texas. Plaintiff also maintained that his physical problems continued after his arrival in Michigan. This disability eventually resulted in his inability to work. Fortunately, plaintiff did receive medical treatment in Michigan which was to his satisfaction and the physician was able to diagnose his illness.

Plaintiff, apparently because of his illness, was unable to continue his employment at the farm. Plaintiff's wife, with the assistance of plaintiff and a migrant assistance worker, filled out an ADC application and filed such an application with the social services office. A caseworker denied plaintiff's application for ADC benefits on the basis that plaintiff was not a resident of Michigan. Plaintiff's illness continued and plaintiff continued to seek treatment from his new-found physician. Fortu-

nately, also, a migrant assistance program was able to locate more permanent housing for plaintiff and his family in a neighboring county. Plaintiff and his family were apparently so satisfied with the medical treatment rendered to him, that they decided at some point in time to establish permanent residence in Michigan. Plaintiff then reapplied for benefits which were granted by the Van Buren County Department of Social Services.[1] Plaintiff then requested a hearing to contest the initial denial of his request for assistance. After a hearing held in September of 1974, the administrative law judge upheld the caseworker's denial of assistance on the basis of residency. This decision was approved by the Michigan Department of Social Services in November of 1974. Plaintiff then appealed to the circuit court which also upheld the decision denying benefits. Plaintiff now appeals to us.

## I

The caseworker, the administrative law judge and the circuit court have all determined that defendant was not entitled to ADC benefits. Of course, the first problem which we must resolve concerns the proper standard of review. Plaintiff maintains that the Administrative Procedures Act (APA), MCLA 24.201, *et seq.;* MSA 3.560(101), *et seq.,* is applicable. Defendant maintains that it is not. The APA expressly provides:

"(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold

[1] This subsequent grant of benefits occurred approximately one month after the initial denial. The grant of benefits apparently is not in dispute, our only question concerns the propriety of the initial denial.

unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following: * * *

"(d) Not supported by competent, material and substantial evidence on the whole record." MCLA 24.306(1)(d); MSA 3.560(206)(1)(d).

The APA also provides:

"Judicial review of a final decision or order in a contested case shall be by any applicable special statutory review proceeding in any court specified by statute and in accordance with the general court rules." MCLA 24.302; MSA 3.560(202).

Therefore, if the Social Welfare Act (MCLA 400.1, *et seq.;* MSA 16.401, *et seq.)* provides for an appellate review different than that specified in the APA, the Social Welfare Act must govern. As it turns out, both the statute and the constitution together control to provide for review of this administrative decision.

"Whenever an application is made for assistance, the county department of social welfare shall make a thorough investigation and report to the state department in the manner prescribed by it, giving its recommendation of the amount of assistance, if any, to be allowed. If the application be disallowed, or if the applicant is dissatisfied with the amount of assistance he is receiving, or is to receive, he may demand, in writing, a hearing of his case, as provided for in section 9 or section 65. The applicant or recipient may appeal to the circuit court of the county in which he resides, which court shall have power to review questions of law involved in any final decision or determination of the state department." MCLA 400.37; MSA 16.437.

The constitution provides that judicial review of administrative hearings:

"[S]hall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28.

Therefore, we feel the Social Welfare Act provides for the same standard of review as provided in the Administrative Procedures Act, that is, whether the decision is supported on the whole record by "competent, material and substantial evidence".

The trial court after review of the administrative record and briefs of the parties, apparently decided that the order of the administrative law judge was indeed supported by competent material and substantial evidence on the whole record. We must decide if the trial court was correct.

The Michigan Department of Social Services Assistance Payment Manual cites the Federal standard of residence to be used also as the Michigan standard. This Federal regulation provides:

"(1) A resident of a State is one who is living in the State voluntarily with the intention of making his home there and not for a temporary purpose. A child is a resident of the State in which he is living other than on a temporary basis. Residence may not depend upon the reason for which the individual entered the State, except insofar as it may bear upon whether he is there voluntarily or for a 'temporary purpose'.

"(2) Residence is retained until abandoned. Temporary absence from the State, with subsequent returns to the State, or intent to return when the purposes of the absence have been accomplished, does not interrupt continuity of residence." 45 CFR 233.40(a)(1)(2) (1976).

This definition also accords with the normal definition of residency used for other purposes in Michigan.

Apparently on the basis of this legal standard, the department in the instant case determined that plaintiff did not meet the residency requirements. The caseworker expressed her reasons for denial of benefits as follows:

"Mr. & Mrs. Soto applied for assistance on July 15 of '74 for themselves and three of their four children. One child was still at their home in Texas, or in Texas. They came up to work the fruit harvest and were staying on the Leonard Frank farm. They were still maintaining their home in Texas by sending rent money to the landlord and all their furniture was in the home in Texas and they were also keeping up payments on a lot that they were buying in Texas. I denied them on 7-18-74 because I did not consider them Michigan residents. They had a household in Texas and were living in temporary housing here. On 7-23 they did reapply for assistance and that was when the case was transferred to Van Buren pending processing because they did move to Van Buren and to permanent housing. The reason that I denied them was because of the law that says a resident of a state is one who is living in the state voluntarily with the intention of making his home here and not for a temporary purpose. Now the Sotos were maintaining a home in Texas, they were buying a lot in Texas, they were here for the fruit harvest, they had a minor child still in Texas, all home furnishings were in Texas, they were living in migrant housing on a farm, they were being treated at the migrant clinic, they were applying for and receiving EA (Emergency Assistance) as migrants and they were also receiving food stamps from the food stamp office, the migrant food stamp office."

The administrative law judge after a full hearing concluded that the caseworker's decision was proper.

The substantial evidence test has been applied by this Court several times recently. *Sponick v Detroit Police Dept,* 49 Mich App 162; 211 NW2d

674 (1973), *Local 547, International Union of Operating Engineers, AFL-CIO v Henry Ford Hospital,* 59 Mich App 625; 229 NW2d 925 (1975), *Michigan Employment Relations Commission v Kleen-O-Rama,* 60 Mich App 61; 230 NW2d 308 (1975). As indicated, we hold the substantial evidence test also applies to review of social services cases.

Plaintiff maintains that at the time of his application his intent was to remain in Michigan permanently. The objective evidence certainly indicates an intent to maintain only a temporary residence in Michigan. It is not disputed that plaintiff did at some point establish permanent residence in Michigan. The dispute arises over when this occurred. The administrative law judge was apparently aware of this and aware of the importance of evidence of the medical treatment which became the key factor in plaintiff's decision to remain in Michigan. We feel "intent" and "timing" issues such as were the subject of the dispute herein are difficult fact questions particularly suited for resolution by a trier of fact who had the opportunity to observe the demeanor of the witnesses.

Recently a Federal court was able to briefly and clearly explain what is meant by a "substantial evidence test". *Ginsburg v Richardson,* 436 F2d 1146 (CA 3, 1971), *cert den* 402 US 976; 91 S Ct 1680; 29 L Ed 2d 142 (1971), *reh den* 403 US 912; 91 S Ct 2213; 29 L Ed 2d 690 (1971). The Court explained:

" 'Substantial evidence' means evidence which a reasoning mind would accept as sufficient to support a conclusion. 'It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg* at 1148, citing *Laws v Celebrezze,* 368 F2d 640, 642 (CA 4, 1966).

The Court in *Ginsburg* made it quite clear that the findings of the administrative tribunal will ordinarily be upheld and that it is not the Court's function to resolve conflicts in the evidence or to pass on the credibility of the witnesses. There was substantial evidence on the whole record to support a finding that plaintiff was not a resident of Michigan and not entitled to ADC benefits.

## II

Plaintiff also contends that there was a procedural error below which demands reversal and may even have been an independent violation of procedural due process. We rule, however, that plaintiff has waived any objections he may have to this procedure. *Book Furniture Co v Chance,* 352 Mich 521; 90 NW2d 651 (1958).

At the hearing before the administrative law judge, apparently several documents from the case file were not available, including plaintiff's initial application for ADC benefits and the caseworker's summary of the case. At the hearing, the administrative law judge did conduct a full hearing into all matters relevant to plaintiff's claim for benefits, including substantial testimony regarding these documents. At the conclusion of the hearing, the administrative law judge indicated that she would obtain these documents, make them part of the record and supply counsel with copies. Plaintiff did not object at that time. Also, the administrative law judge apparently left the record open for a period of time to allow objections. Plaintiff should have made objection below. Plaintiff does not now allege inaccuracy of the documents or surprise nor any other reason to indicate that injustice resulted. An administrative hearing is often conducted within a more flexible framework

than a courtroom trial. Nevertheless, due process considerations also apply to administrative hearings, but are subject again to some balancing of interests. *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970). We rule that the procedure herein was proper. The administrative law judge determined that the record would be proper only if the missing documents were supplied. The record was apparently left open and plaintiff given an opportunity to object. There is no allegation that the documents are not genuine. Indeed, the application for benefits, the most important document herein, was filled out by plaintiff. There was no error.

## III

Plaintiff also raises several constitutional challenges herein on the basis of recent United States Supreme Court cases dealing with public assistance.

Plaintiff's first challenge is based on *King v Smith,* 392 US 309; 88 S Ct 2128; 20 L Ed 2d 1118 (1968). In *King,* the Court held invalid Alabama's "substitute father" regulation which denied assistance to families where the mother cohabits in or outside the home with any single or married able-bodied man. The Court based its decision on the fact that the Alabama statute was inconsistent with Federal standards. That is not the case herein. Michigan's definition of "residence" is based directly on Federal regulation. 45 CFR 233.50 (1976). Plaintiff maintains that Michigan has set out a more restrictive condition of eligibility because it requires liquidation of out-of-state holdings. This is not the case. The degree of outside holdings is merely a criterion now used as a guideline to ascertain if the applicant's subjective

intention is really to remain permanently in Michigan. Such guideline is reasonable to use as an indicator of intent. The applicant's own declarations of intention are normally entitled to substantial weight. Nevertheless, these administrative guidelines may so clearly point to nonresidence of an applicant as to outweigh the applicant's bare assertion of residency. There has been no showing that Michigan imposes a different residence standard than that authorized by this Federal regulation. Plaintiff does not challenge the requirement of Michigan residency, only apparently the manner of determining such residency, which we rule is in conformity with Federal standards. We find no basis for the finding of any inconsistency between Federal and state standards.

Plaintiff also maintains that Michigan's residency requirements violate plaintiff's rights to travel and to equal protection of the laws. The United States Supreme Court held that a one-year residency period requirement to obtain public assistance is an invidious discrimination denying equal protection of the laws. *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969). *Shapiro,* however, represents an entirely different situation. As the Court noted:

"There is no dispute that the effect of the waiting-period requirement in each case is to create two classes of needy resident families indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction." 394 US at 627; 89 S Ct at 1327; 22 L Ed 2d at 611.

In the instant case, no such classification is required. Either one is a resident entitled to benefits or one is a nonresident who must look to the state

of his residence for public assistance. There is no constitutional infirmity. Similarly, there is no constitutionally defective purpose as existed in *Shapiro* to prohibit migration of needy persons. All that Michigan requires is a genuine intent to remain in Michigan and establish Michigan as one's residence. We rule that there is no invidious classification which has either as its purpose or as its effect a violation of constitutional rights.

Affirmed.