## TIMMONS v DEPARTMENT OF SOCIAL SERVICES

Docket No. 77-2158. Submitted April 5, 1978, at Lansing.—Decided
April 2, 1979.

Robert Timmons, by his wife Ethel Timmons, applied to the
Midland County Department of Social Services for assistance
under the ADC-I program (aid to dependent children for the
reason of parental incapacity). Plaintiff was deemed eligible
and received benefits. Plaintiff's eligibility was thereafter redet-
ermined by the county social services department resulting in
the termination of such benefits. Plaintiff appealed the county
department's decision to an administrative law judge who
determined that the plaintiff qualified for ADC-I. Defendant,
the State Department of Social Services Hearing Authority,
thereafter reviewed the administrative law judge's opinion and
reversed. Plaintiff appealed to the Midland Circuit Court,
where the Director of the State Department of Social Services
was added as a defendant. David Scott DeWitt, J., upheld the
hearing authority's determination denying benefits to the plain-
tiff. Plaintiff appeals, alleging, among other things, that the
hearing authority erred by not considering plaintiff's eligibility
for ADC-U benefits. *Held:*

1. Families with dependent children where the father is
unemployed may qualify for ADC-U (aid to dependent children
where the father is unemployed) benefits under a program
funded on a matching basis by the Federal government and a
participating state.

2. Any state ADC-U plan must include within its definition of
"unemployed father" any father who is employed less than 100
hours per month.

3. The hearing authority did not err in determining that the
plaintiff did not qualify for ADC-U benefits.

4. The Department of Social Services' adoption of the 100-
hour standard for ADC-U benefits is fully consistent with the

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 79 Am Jur 2d, Welfare Laws § 11.
[2, 3] 79 Am Jur 2d, Welfare Laws § 15.
[4] 2 Am Jur 2d, Administrative Law §§ 621, 682.

Legislature's expressed intent to insure full Federal approval of the state's social welfare programs and with the department's statutory mandate to distribute such funds subject to Federal rules and regulations.

5. The Department of Social Services regulation regarding eligibility standards for ADC-I benefits is in conflict with the letter and spirit of Federal law and is invalid.

6. The administrative law judge's determination of eligibility is reinstated since it is supported by substantial evidence on the whole record.

The decision of the trial court, affirming the State Department of Social Services Hearing Authority's denial of ADC-I benefits, is reversed. The determination allowing benefits is reinstated.

1. SOCIAL SECURITY AND PUBLIC WELFARE — ADMINISTRATIVE LAW — SOCIAL SERVICES — ADC-U BENEFITS — UNEMPLOYED FATHER — DEFINITION.

Any state ADC-U (aid to dependent children where the father is unemployed) plan must include within its definition of "unemployed father" any unemployed father who is employed less than 100 hours per month.

2. SOCIAL SECURITY AND PUBLIC WELFARE — ADMINISTRATIVE LAW — FEDERAL REGULATIONS — ADC-I BENEFITS — ELIGIBILITY — PHYSICAL OR MENTAL INCAPACITY — ABILITY TO SUPPORT.

A Federal regulation defining a "physical or mental incapacity" sufficient to qualify an individual for ADC-I benefits (aid to dependent children for the reason of parental incapacity) focuses on the effect of the parental incapacity or the ability to support or care for dependent children; the Federal regulation emphasizes a substantial reduction or an elimination of the support ability; the language used is inherently flexible and evidences an intent that no one factor related to support be automatically determinative of eligibility (45 CFR 233.90[c][1][iv]).

3. SOCIAL SECURITY AND PUBLIC WELFARE — ADMINISTRATIVE LAW — DEPARTMENT OF SOCIAL SERVICES — ADC-I BENEFITS — ELIGIBILITY FOR BENEFITS — FEDERAL REGULATIONS — CONFLICTS.

Regulations by the Department of Social Services, pertaining to eligibility for ADC-I benefits (aid to dependent children for the reason of parental incapacity), which represent an effort by the state either to define the term "physically or mentally incapacitated" so as to exclude any parent who is able to work "full-time", *i.e.,* 100 hours or more per month, or at the very least to

narrow the broad import of the applicable Federal regulations by using the number of hours worked as the sole determinative factor for eligibility are in conflict with the letter and spirit of Federal law; a denial of benefits based on this single determinative factor is invalid (45 CFR 233.90[c][1][iv]).

4. SOCIAL SECURITY AND PUBLIC WELFARE — ADMINISTRATIVE LAW — ADMINISTRATIVE LAW JUDGE — TRIER OF FACT — ADC-I BENEFITS — RECORD SUPPORT.

An administrative law judge, as trier of fact, has the opportunity to hear testimony and view the witnesses in reaching his decision and his determination of a petitioner's eligibility for ADC-I benefits (aid to dependent children for the reason of parental incapacity) should be upheld as long as it is supported by substantial evidence on the whole record and/or is authorized by law.

*Lawrence F. Gambino,* Legal Services of Eastern Michigan, for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Thomas R. Wheeker* and *Robert N. Rosenberg,* Assistants Attorney General, for defendants.

Before: ALLEN, P.J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. Plaintiff, Robert Timmons, appeals the determination of the State Department of Social Services Hearing Authority that plaintiff was ineligible for benefits provided to families with dependent children under the ADC-I program (aid to dependent children for the reason of parental incapacity).

Plaintiff is a painter by trade, working a maximum of 30 hours per week. Since at least 1969,[1] he

[1] The medical packet attached to the hearing record reveals a history of back problems first brought to the attention of the County Department of Social Services in October, 1969. The record also reveals a number of applications for aid over a four-year period; only the grant of benefits in 1974 and their subsequent cancellation are in issue here.

has suffered from back problems that necessitate certain restrictions on his work activities. Due to his back condition and work limitations, he applied to the Midland County Department of Social Services (DSS) for assistance under the ADC-I program. In a Medical Examination Report submitted to the county DSS in October, 1973, plaintiff's physician diagnosed his condition as degenerative disc disease and early degenerative arthritis of the spine. In the report he indicated that this condition was deteriorating and was expected to last for the plaintiff's lifetime, but further stated that the plaintiff was employable with work limitations against prolonged standing, bending and lifting.[2] Based on this report, the DSS certified plaintiff as disabled and eligible for ADC-I benefits in January, 1974, for the reason that his employment, although full-time, unduly endangered his health. Social Services specified that a medical review of this determination be conducted in July, 1974.[3]

This review was finally concluded in September, 1974. The physician's report shows a diagnosis substantially similar to the report filed in October, 1973. It noted work limitations of limited lifting, climbing and work endurance, but did indicate that plaintiff's back condition had stabilized.[4] On October 8, 1974, the DSS terminated plaintiff's ADC-I benefits on the grounds that the "[m]edical or psychiatric findings" did not "justify disability to the extent that it will materially impair or affect [the plaintiff's] Employability".[5]

Plaintiff appealed the county department's deci-

[2] Medical Examination Report, dated October 11, 1973.

[3] Disability Certification, dated January 9, 1974.

[4] Medical Examination Report, dated September 12, 1974.

[5] Disability Certification, dated October 8, 1974.

sion. After a hearing, the administrative law judge determined that the plaintiff qualified for ADC-I. The hearing authority, acting under authorization of the state DSS director, reversed this decision on the grounds that plaintiff was no longer physically incapacitated as defined by Federal regulations and department policy. By order and opinion, the trial court upheld this determination, finding that there was sufficient evidence from the hearing record to support the termination of benefits. The court held further that because the plaintiff was considered fully employed by the DSS, he did not meet the Federal eligibility requirements of 45 CFR 233.90(c)(iv), in that he did not suffer an incapacity that "reduce[d] substantially * * * [his] ability to support or care for [his] otherwise eligible [children]". Both the hearing authority's decision and the trial court's affirmance of plaintiff's ineligibility for ADC-I attached considerable significance to the fact that plaintiff was fully-employed, *i.e.*, he worked in excess of 100 hours per month.[6]

Plaintiff contends on appeal: (1) the hearing authority erred by not considering plaintiff's eligibility for ADC-U benefits, (2) the hearing authority's decision was not supported by substantial evidence on the whole record, (3) the hearing authority applied incorrect standards to reach its decision by failing to consider the needs of plaintiff's dependent children and by applying an eligibility standard in conflict with Federal law, and (4) the use of the 100-hours full-employment test for ADC-I eligibility constituted an irrebuttable presumption violative of due process and equal protection.

Plaintiff's first asserted error concerns the hear-

[6] Decision of Hearing Authority, May 2, 1975, Opinion of the trial court, No 75-005586-AA, dated April 19, 1977.

ing authority's failure to consider the plaintiff's eligibility for ADC-U benefits. Families with dependent children where the father is unemployed may qualify for ADC-U benefits, under a program funded on a matching basis by the Federal government and a participating state. 42 USC 602-603, 607, MCL 400.10; MSA 16.410, MCL 400.56d; MSA 16.456(4). 45 CFR 233.100(a)(1)(i) defines an "unemployed father" as one who is employed less than 100 hours per month. Any state ADC-U plan must include fathers who meet this test. Plaintiff argues, however, that while the Federal requirements establish minimum eligibility standards which override any more exclusive state criteria, *Quern v Mandley,* 436 US 725; 98 S Ct 2068; 56 L Ed 2d 658 (1978), *Townsend v Swank,* 404 US 282; 92 S Ct 502; 30 L Ed 2d 448 (1971), they do not prevent states from creating broader eligibility standards. It is argued, therefore, that because plaintiff works less than 64 hours in any consecutive two-week period, he qualifies for ADC-U benefits under MCL 400.56d; MSA 16.456(4). We disagree and find that the hearing authority did not err.

The present version of MCL 400.56d; MSA 16.456(4) was enacted in 1966, at a time when Federal law permitted states participating in the ADC-U program to establish their own definition of unemployment for eligibility purposes. In 1968, however, Congress amended the statute to allow the Secretary of HEW to define unemployment.[7] The stated purpose of the amendment was to provide for "a uniform definition * * * throughout the United States". 1967 US Code Cong & Admin News, vol 2, p 2837. The present uniform standard, found at 45 CFR 233.100(a)(1)(i), states in

---

[7] Pub. L. 90-248, § 203(a), 1968.

mandatory terms, that a participating state's ADC-U plan must include within its definition of "unemployed", any father who works less than 100 hours per month. This standard has been incorporated into the Michigan ADC-U program by Item 216, p 3 of the DSS Assistance Payments (AP) Manual. Given Congress's clearly stated goal of uniformity in administering the ADC-U program, MCL 400.56d; MSA 16.456(4) is of doubtful validity.

Our conclusion concerning MCL 400.56d; MSA 16.456(4) is further supported by other provisions of the Michigan Social Welfare Act that indicate the Legislature's intent to cooperate fully with the Federal government in administering social welfare programs. The Legislature explicitly permits the Director of the State Department of Social Services to:

"distribute * * * subject to federal rules and regulations, and in accordance with the rules promulgated by the director, moneys appropriated by the legislature or received from the federal government for the granting of aid to dependent children." MCL 400.14(b); MSA 16.414(b);

"adopt any plan required or desirable to participate in the distribution of federal moneys or the assistance of the federal government."

and:

"[f]or the purpose of assuring full federal approval of the activities of the department and local departments with respect to the operation of a plan, * * * do all things reasonable and proper to conform with federal requirements pertaining to methods and standards of administration." MCL 400.10; MSA 16.410.

The DSS's adoption of the 100-hour standard set

out in 45 CFR 233.100(a)(1)(i) is thus fully consistent with the Legislature's expressed intent to insure full Federal approval of the state's social welfare programs and with the department's statutory mandate.

We next turn to plaintiff's contention that the hearing authority improperly determined his eligibility for ADC-I benefits by applying standards in conflict with Federal law. Plaintiff bases his argument on the principle, upheld in a number of United States Supreme Court cases, that:

> "[A]t least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." *Townsend v Swank, supra,* at 286. *Quern v Mandley, supra, King v Smith,* 392 US 309; 88 S Ct 2128; 20 L Ed 2d 1118 (1968).

Plaintiff argues that Rule 400.10(3) and AP Manual Item 215, p 2 and Item 216, p 3 establish eligibility requirements for ADC-I benefits in conflict with Federal regulations.

42 USC 606(a) defines a dependent child who may be eligible for aid under the AFDC program as one who "has been deprived of parental support or care by reason of the * * * physical or mental incapacity of a parent". The Secretary of HEW defines the term "physical or mental incapacity" as:

> " 'Physical or mental incapacity' of a parent shall be deemed to exist when one parent has a physical or mental defect, illness, or impairment. The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to reduce

substantially or eliminate the parent's ability to support or care for the otherwise eligible child." 45 CFR 233.90(c)(1)(iv).

While the DSS Assistance Payments Manual cites the above regulation, the above-cited departmental policy and administrative rules also define a physically or mentally incapacitated parent as one who is unable to engage in "full-time employment". The definition of this standard is "working less than 100 hours per month" and is borrowed from regulations pertaining to the ADC-U program.[8]

The question before us is whether the regulations at issue constitute an impermissible attempt by the state to narrow eligibility standards for ADC-I benefits in such a manner as to conflict with Federal law. In cases finding such a conflict, the invalid state regulations created blanket exclusions by defining or creating an eligibility criterion in a manner inconsistent with the applicable Federal law or regulation. *Townsend v Swank, supra, King v Smith, supra, Lopez v Vowell,* 471 F2d 690

[8] The rules challenged by plaintiff read:

Rule 400.10(3):

"In aid to dependent children, mental or physical incapacity is considered to exist if due to mental or physical infirmity the parent is unable to engage in full-time employment, or to perform all the tasks required in a remunerative occupation for which the person under consideration is otherwise qualified, or to engage in employment without endangering life or health." (Emphasis added.)

DSS AP Manual, Item 215, p 2:

"In order to consider a parent incapacitated, one of the following conditions must be met:

"1. The parent's incapacity must prevent him from working full-time at any job for which he is otherwise qualified; or * * *."

and id., Item 216, p 3.

"UNEMPLOYED—At application, a father who has been employed only part time must have worked less than 100 hours per month during the 30 days preceding the date of the first payment to be considered unemployed * * *.

"Any father employed 100 or more hours (unless intermittent), even though his income is insufficient on assistance standards to meet the family's needs, is not eligible."

(CA 5, 1973), *cert den* 411 US 939; 93 S Ct 1903; 36 L Ed 2d 401 (1973).

The Federal regulation defining a "physical or mental incapacity" sufficient to qualify an individual for ADC-I benefits focuses on the effect of the parental incapacity on the ability to support or care for dependent children. It emphasizes a substantial reduction or an elimination of the support ability. The language used is thus inherently flexible and evidences an intent that no one factor related to support be automatically determinative of eligibility or ineligibility for ADC-I. The purpose is clearly to take into account the various ways a parent's disability may affect the support of his or her family and the extent to which it is affected.

The regulations in the case at bar represent an effort by the state either to define the term "physically or mentally incapacitated" so as to exclude any parent who is able to work "full-time", *i.e.,* 100 or more hours a month, or at the very least to narrow the broad import of 45 CFR 233.90(c)(1)(iv) by using the number of hours worked as a sole determinative factor for eligibility. Under these definitions, it matters not that one's ability to support may be substantially reduced. We agree with plaintiff that the DSS regulation at issue in the case at bar is in conflict with the letter and the spirit of Federal law.[9] The denial of benefits to plaintiff was therefore invalid under the principle of *King v Smith, supra.* The decision of the hearing authority and the trial court is therefore reversed.

However, the initial disposition of this case makes it unnecessary to remand for a new hear-

---

[9] It must be pointed out that while a state may not narrow eligibility requirements so as to conflict with Federal law, a state may still achieve its goal to allocate scarce social welfare resources by setting benefit levels. *Townsend v Swank, supra,* at 291.

ing. The original decision of the administrative law judge, after hearing on the issue of eligibility, found that the plaintiff suffered from a physical incapacity and that this incapacity substantially reduced his ability to support his children. As the trier of fact, the administrative law judge had the opportunity to hear testimony and view the witnesses in reaching his decision. His determination of eligibility, therefore, under the principle enunciated in *Soto v Director of the Michigan Dep't of Social Services,* 73 Mich App 263, 271-272; 251 NW2d 292 (1977), will be upheld as long as it is supported by substantial evidence on the whole record and/or is authorized by law. Based on our review of the hearing transcript, we find that there was substantial evidence on the whole record to support the finding of plaintiff's eligibility for ADC-I benefits. We therefore reinstate the decision of the administrative law judge.

The appellees argue that the administrative law judge improperly placed the burden of proof on the state to establish the changes in the "status quo" that justified the finding of ineligibility. We disagree that the administrative law judge misstated the burden of proof. The clear import of the statement in his opinion is that, while the plaintiff had introduced competent evidence establishing his eligibility for ADC-I benefits, the Midland County Department of Social Services failed to offer evidence sufficient to rebut the plaintiff's asserted eligibility. See *Stuart v Canary,* 367 F Supp 1343, 1345 (ND Ohio, 1973).

Due to our view, that the DSS regulations' invalid conflict with Federal law provides sufficient grounds for reversal, we do not reach the constitutional issue raised by the plaintiff. *Ryan v Ore Lake,* 56 Mich App 162, 167; 223 NW2d 637 (1974).

The decision of the trial court, affirming the State Department of Social Services Hearing Authority's denial of ADC-I benefits is reversed. The decision of the administrative tribunal finding plaintiff eligible for ADC-I benefits is reinstated. No costs, as a public question is involved.