REED v HURLEY MEDICAL CENTER

Docket No. 81078. Submitted August 6, 1985, at Lansing. Decided
    February 24, 1986.

    Petitioner, Mark A. Reed, is a Medicaid recipient who suffers
        from muscular dystrophy. In May, 1980, he was rushed to the
        emergency room at Hurley Medical Center suffering from
        pneumonia and respiratory failure caused by muscle weakness.
        He was given a tracheostomy, and ended up spending approxi-
        mately five months in Hurley's intensive care unit. Thereafter,
        he was transferred to Hurley's transitional care unit. He even-
        tually recovered without suffering brain damage. Petitioner has
        been dependent upon a ventilator, but his condition had been
        stable for at least nine months at the time of the hearing
        before a hearing referee which is relevant to this appeal. In
        October, 1982, the Michigan Department of Social Services
        Medical Services Administration reviewed petitioner's case and
        determined that he could get adequate care at Oak Hill Nurs-
        ing Home in Farmington. Oak Hill has developed a specialized
        unit which provides skilled nursing care for patients who
        require ongoing ventilator or respiratory support. Oak Hill is
        located five minutes from Botsford Hospital, which is ranked
        fourth in the state as an acute care facility. Hurley costs the
        state from $500 to $550 per day for petitioner's care and Oak
        Hill costs from $200 to $225 per day. A hearing was held in
        August, 1983, before a hearing referee. The hearing referee
        thereafter held that it would be reasonable and proper for the
        Department of Social Services to reduce the payments for
        medical services to the petitioner. The petitioner appealed to
        the Genesee Circuit Court, naming as respondents Hurley
        Medical Center, the Michigan Department of Social Services
        and the department's director. The circuit court, Thomas C.
        Yeotis, J., reversed the determination of the hearing referee

REFERENCES

Am Jur 2d, Administrative Law §§ 539-552.

Am Jur 2d, Welfare Laws §§ 38-41, 107.

What is related organization within meaning of 42 CFR § 405.427,
    limiting reimbursement of costs of services, facilities, or supplies
    furnished to Medicare provider by such organization. 63 ALR Fed
    486.

after determining that the referee's decision was not supported by substantial evidence on the record. The circuit court entered an order which set aside the hearing referee's determination that DSS could reduce payments for medical services provided to petitioner, enjoined Hurley Medical Center from transferring petitioner, directed DSS to provide petitioner with the level of care he had been receiving at Hurley, barred DSS from reducing payments to Hurley and denied DSS' motion for summary judgment. DSS appeals from that order. *Held:*

1. The circuit court erred in determining that the hearing referee's decision was not supported by substantial evidence on the record.

2. The evidence does not support a finding that the services provided at Hurley were medically necessary or that petitioner could not receive adequate care at Oak Hill. Substantial evidence was presented at the administrative hearing to show that the level of care at Oak Hill would adequately provide for petitioner's needs, that he would suffer no greater risk of infection at Oak Hill, that Botsford Hospital could adequately provide emergency care should the need arise, and that the transfer would not destroy the petitioner's will to live.

The order of the circuit court is vacated and the decision of the hearing referee is reinstated.

1. ADMINISTRATIVE LAW — APPEAL — CONSTITUTIONAL LAW.

The Court of Appeals reviews final decisions and orders from administrative agencies by determining whether they are authorized by law and whether they are supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28; MCL 24.306[1][d]; MSA 3.560[206][1][d]).

2. SOCIAL SERVICES — APPEAL — SUBSTANTIAL EVIDENCE TEST — CONSTITUTIONAL LAW.

The substantial evidence test, which applies to the review of social services cases, requires more than a mere scintilla of evidence but somewhat less than a preponderance of the evidence (Const 1963, art 6, § 28; MCL 24.306[1][d]; MSA 3.560[206][1][d]).

3. ADMINISTRATIVE LAW — APPEAL — CONSTITUTIONAL LAW.

The Court of Appeals, in reviewing final decisions and orders from administrative agencies, carefully examines the whole record; the Court avoids invading the fact-finding province of the agency since it is not the function of a reviewing court to resolve evidentiary conflicts or to pass on witnesses' credibility (Const 1963, art 6, § 28; MCL 24.306[1][d]: MSA 3.560[206][1][d]).

4. SOCIAL SERVICES — MEDICAID — UNITED STATES CODE — CODE OF
   FEDERAL REGULATIONS.

   Medicaid is a federally established program which enables Michi-
   gan to furnish medical assistance to persons otherwise unable
   to obtain such care; Michigan may only pay for services under
   the program which the Michigan Department of Social Services
   deems are medically necessary under the Code of Federal
   Regulations (42 USC 1396 *et seq.;* 42 CFR 440.230; MCL
   400.105 *et seq.;* MSA 16.490[15] *et seq.*).

5. SOCIAL SERVICES — MEDICAID.

   The Legislature, in seeking compliance with the federal Medicaid
   program, has required the Michigan Department of Social
   Services to limit payments to hospitals under the program to
   the minimum period of hospitalization which is necessary;
   moreover, the director of the department must assure that
   reimbusement is made only for medically appropriate services
   and that the state is a prudent buyer and pays only for services
   that are needed or appropriate (MCL 400.109, 400.111a, subds
   [2][b] and [e], and [3][b]; MSA 16.490[19], 16.490[21a], subds [2][b]
   and [e], and [3][b]).

*John M. Wright* and *Jon T. Warren,* for peti-
tioner.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *William K. Ba-
singer,* Assistant Attorney General, for respondent
Department of Social Services.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and
D. P. KERWIN,* JJ.

PER CURIAM. Respondent Department of Social
Services appeals as of right from a circuit court
order which set aside a determination by hearing
referee Robert H. Mourning that DSS could reduce
payments for medical services provided to peti-
tioner, Mark Alan Reed. The circuit court also
enjoined Hurley Medical Center, a respondent be-

---

* Recorder's court judge, sitting on the Court of Appeals by assign-
ment.

low, from transferring petitioner, directed DSS to provide petitioner with the level of care he had been receiving at Hurley, barred DSS from reducing payments to Hurley and denied DSS' motion for summary judgment. The issue on appeal is whether the circuit court properly reversed the referee's decision. Because we think it did not, we vacate the circuit court's order and reinstate that of the hearing referee.

Petitioner is a Medicaid recipient who has suffered from muscular dystrophy since he was four years old. At the time of the hearing he was twenty-eight. His muscles do not function with the exception that he has minor movement in his fingers and face. In May, 1980, he was rushed to the emergency room at Hurley Medical Center suffering from pneumonia and respiratory failure caused by muscle weakness. He was given a tracheostomy, and ended up spending approximately five months in Hurley's intensive care unit. Thereafter petitioner was transferred to Hurley's transitional care unit. He eventually recovered without suffering brain damage. Petitioner has been dependent upon a ventilator, but his condition had been stable for at least nine months at the time of the hearing.

In October, 1982, the DSS Medical Services Administration reviewed petitioner's case and determined that he could get adequate care at Oak Hill Nursing Home in Farmington. Oak Hill has developed a specialized unit which provides skilled nursing care for patients who require ongoing ventilator or respiratory support. Oak Hill is located five minutes from Botsford Hospital, which is ranked fourth in the state as an acute care facility. Hurley costs the state from $500 to $550 per day for petitioner's care; Oak Hill costs from $200 to $225 per day.

On April 11, 1983, DSS informed Hurley that Medicaid payments for petitioner would be reduced to the cost of services at Oak Hill. As Hurley was given two weeks to transfer petitioner before payments would be reduced, petitioner sought to enjoin the transfer in circuit court later that month. A show cause hearing was scheduled but adjourned when the Attorney General opined that petitioner was entitled to an administrative hearing pursuant to 42 CFR 431.200 *et seq.,* before any reduction in the level of care could be effectuated. The hearing referee, after a hearing, held in August, 1983, that it would be reasonable and proper for DSS to reduce the payments for medical services to petitioner. Petitioner appealed to circuit court pursuant to MCL 400.37; MSA 16.437. The circuit court set aside the hearing referee's decision.

I

We review final decisions and orders from administrative agencies by determining whether they are authorized by law and whether they are supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d). The substantial evidence test, which applies to the review of social services cases, requires more than a mere scintilla of evidence but somewhat less than a preponderance. *Quality Clinical Laboratories, Inc v Dep't of Social Services,* 141 Mich App 597, 599; 367 NW2d 390 (1985); *Tompkins v Dep't of Social Services,* 97 Mich App 218; 293 NW2d 771 (1980); *Soto v Social Services Director,* 73 Mich App 263; 251 NW2d 292 (1977). We must make a careful examination of the whole record and avoid invading the fact-finding province of the agency.

141 Mich App 599. It is not the function of a reviewing court to resolve evidentiary conflicts or to pass on witnesses' credibility. 73 Mich App 272.

Medicaid is a federally established program which enables states to furnish medical assistance to persons otherwise unable to obtain such care. See 42 USC 1396 *et seq.;* MCL 400.105 *et seq.;* MSA 16.490(15) *et seq.* States may pay only for services which the DSS deems are medically necessary under 42 CFR 440.230. Accordingly, the Michigan Legislature has required DSS to limit payments to hospitals to the minimum period of hospitalization which is necessary. MCL 400.109; MSA 16.490(19). Moreover, the director of the DSS must assure that reimbursement is made only for medically appropriate services, MCL 400.111a(2)(b); MSA 16.490(21a)(2)(b), and must assure that the state is a prudent buyer according to MCL 400.111a(2)(e); MSA 16.490(21a)(2)(e), and pays only for services that are needed or appropriate. MCL 400.111a(3)(b); MSA 16.490(21a)(3)(b). Based upon the foregoing, we review the record to determine whether the services provided to petitioner at Hurley were medically necessary or appropriate, or whether the state, as a prudent buyer, could obtain appropriate services at Oak Hill.

II

The circuit court reversed the hearing referee because it determined that the referee's decision was not supported by substantial evidence on the record. The court found that the referee relied too heavily on the testimony of two pulmonary specialists, Dr. M. Varkey Thomas and Dr. Bert Rabinowitz, and had discounted testimony of Dr. Raymond Failer, who has been petitioner's personal physician since petitioner was four years old. The

hearing referee had relied upon Dr. Rabinowitz' testimony that petitioner's condition was stable and that Oak Hill would provide him adequate care. Dr. Thomas had testified that the ventilator at Oak Hill would be adequate, petitioner's tracheostomy tube could be cared for at Oak Hill, and a private room, which petitioner had at Hurley but would not be provided at Oak Hill, was not necessary for his care. The hearing referee believed that Oak Hill's special ventilator unit would give petitioner the care he needed, especially since Botsford Hospital was nearby. He cited testimony from petitioner's social worker, that nothing at Oak Hill would preclude a positive relationship between petitioner and the staff there, in concluding that the evidence did not show a significant likelihood that petitioner would suffer "transfer trauma."

The circuit court, on the other hand, stressed Dr. Failer's opinion that the condition of petitioner's health was grave, i.e., petitioner suffered from muscular dystrophy, a slowly progressive disease, along with atelectasis of the left lung, which causes a progressive loss of lung volume. Sterility would be a problem at Oak Hill, Dr. Failer believed, and petitioner's mental health would be jeopardized by the move. The circuit court found that Dr. Failer's testimony was more credible than that of the specialists, as Dr. Failer had treated petitioner for over twenty-five years and the other physicians had merely reviewed petitioner's medical records. The court opined that the quantity of opposing testimony did not outweigh the quality of Dr. Failer's evaluation. Therefore the circuit court found that the hearing referee's decision was not supported by substantial evidence on the whole record and determined that the services provided to petitioner by Hurley were medically necessary.

III

We have reviewed the whole record and conclude that the circuit court erred when it found that the hearing referee's decision was not supported by substantial evidence on the record. We believe the evidence does not support a finding that the services provided at Hurley were medically necessary or that petitioner could not receive adequate care at Oak Hill.

Petitioner argues that the move to Oak Hill is a matter of life and death. He stresses that the loss of his close relationships with the Hurley staff would cause him to lose his will to live. Moreover, Hurley is in close proximity to petitioner's immediate family, who would not be able to visit as often were petitioner moved to Oak Hill. While these arguments make our decision a most difficult one, we believe substantial evidence was presented at the administrative hearing to show that the level of care at Oak Hill would adequately provide for petitioner's needs, that he would suffer no greater risk of infection at Oak Hill, that Botsford Hospital could adequately provide emergency care should the need arise, and that the transfer would not destroy petitioner's will to live.

Dr. Failer had five basic concerns: 1) that the nursing care at Oak Hill would be inadequate; 2) that the sterility at Oak Hill would be inferior so that infection would be more likely; 3) that petitioner has suffered recurring illnesses and has progressive atelectasis; 4) that Oak Hill has an inferior ability to handle emergencies; and 5) that petitioner would lose his will to live and eventually die if transferred. We will review the evidence in light of Dr. Failer's concerns, given that the circuit court was persuaded by his testimony.

Dr. Failer stated that the nurses at Hurley were

caring and were trained in intensive and coronary care. At Hurley, the patient-nurse ratio was higher than at Oak Hill. Dr. Edwin Blumberg, Oak Hill's medical director, testified that Oak Hill was one of the few facilities which had been approved for long-term care by the Joint Commission for Accreditation of Hospitals (JCAH). The special ventilator unit there is staffed with a full-time respiratory therapist around the clock. During the day, two nurses and two nurse's aides and a ward clerk are on duty. The nurses have spcialized training in respiratory and ventilator care. There was no indication their training would be inadequate to handle an emergency.

Dr. Rabinowitz, a board-certified specialist in internal medicine and pulmonary medicine, visited Oak Hill and reported that the surroundings were cheerful and the staff was very caring. We therefore think there is no indication that the nurses at Oak Hill would not provide petitioner with the same personalized care he received at Hurley. While they are not trained in coronary care and muscular dystrophy patients often develop heart problems, petitioner had no heart dysfunction at the time of the hearing.

All of the doctors testified that petitioner's muscular dystrophy, combined with his tracheostomy, rendered him infection-prone. Petitioner had been stable for ten months prior to the hearing. Dr. Failer admitted this. Thus, at the time of the hearing there was no evidence that petitioner was in need of acute care. Dr. Failer, concerned with petitioner's atelectasis and the possibility of petitioner's developing an arrhythmia, acknowledged that the atelectasis would progress regardless of petitioner's location, and that petitioner did not currently suffer from heart dysfunction.

While Dr. Failer's testimony established that

instances of infection and life-threatening situations could arise at any time, no such problems had arisen for the preceeding ten months and it could not be determined when such problems might arise. Therefore we do not believe that petitioner had substantiated the need for acute care at the time of the hearing.

Dr. Failer further testified that petitioner needed the controlled environment that his private room at Hurley provided him, and that at Oak Hill he would be in a room with two other patients. Nursing homes, he stated, were notorious for infections as compared to hospitals. Dr. Blumberg testified that the special unit at Oak Hill was isolated from the rest of the nursing home. Thus, there was no reason to be concerned that other patients might wander in. According to Dr. Thomas, other patients on ventilators at Hurley did not have private rooms; petitioner had a private room at Hurley only because of his location in the hospital and not because of the need for sterile conditions. Although nursing homes might be notorious for infections, Oak Hill has been approved by the JCAH. Testimony indicated that the threat of infection would be no greater there than in a hospital setting. Moreover, there was no evidence that infections could be introduced through the "rotations" of nurses at Oak Hill nor was there any evidence that the Oak Hill nurses would not maintain the necessary sterile conditions required for the care of petitioner's tracheostomy. We therefore do not believe the need for sterile conditions should prevent petitioner's transfer to Oak Hill.

Dr. Failer also assumed petitioner's will to live would dissipate because of the diminished social intercourse petitioner would receive at Oak Hill. Petitioner had visited Oak Hill in anticipation of

the move. His social worker noted that, although petitioner was appropriately anxious about the move, he would adapt. There was no evidence that petitioner's adjustment difficulties would be so excessive that the change would destroy his will to live. While there was evidence that petitioner's family could not visit him as often at Oak Hill, there was no evidence that he would be deprived of family interaction.

Dr. Failer expressed concern that there would be no physician on duty twenty-four hours a day at Oak Hill. Should petitioner's tracheostomy tube dislodge, he might cease breathing before he could get to Botsford Hospital. Dr. Thomas, on the other hand, did not expect trouble with the tracheostomy tube; he stated that one could learn to care for the tracheostomy tube in ten minutes. Even were petitioner to need a new surgical incision, which was unlikely, such would not be an "on the spot emergency" according to Dr. Rabinowitz. Petitioner's breathing could be maintained in the ambulance on the way to Botsford Hospital.

Dr. Thomas explained that petitioner required the same level of care he was currently receiving. This meant a competent ventilating machine and respiratory therapist around the clock, competent nursing care and a physician. Petitioner would receive this kind of care at Oak Hill. We believe Dr. Failer's concerns were for problems which may or may not arise in the future and were based on concern about nursing homes in general, as opposed to specific problems at Oak Hill.

There was substantial evidence on the whole record to support the hearing referee's decision that petitioner's medical needs could be adequately provided for at Oak Hill.

We vacate the order of the circuit court and reinstate the decision of the hearing referee.