## LOPEZ v DEPARTMENT OF SOCIAL SERVICES

1. STATES—ADMINISTRATIVE LAW—PUBLIC ASSISTANCE—AID TO MIGRANTS—SOCIAL SECURITY ACT—STATUTES.

   A state which elects to extend aid to migrants must thereafter conform its plan to the requirements of the Social Security Act and the rules and regulations promulgated thereunder by the Department of Health, Education and Welfare (42 USCA 602, 606[e]).

2. ADMINISTRATIVE LAW—ADMINISTRATIVE AGENCIES—STANDARD OF REVIEW—STATUTES.

   A decision or order of an administrative agency should be held unlawful and set aside if substantial rights of a petitioner have been prejudiced because the decision or order is not supported by competent, material and substantial evidence on the whole record (MCLA 24.306[1] [d]; MSA 3.560[206] [1] [d]).

3. ADMINISTRATIVE LAW—AID TO MIGRANTS—STANDARD OF REVIEW—INCOME OF MIGRANTS—STATUTES.

   A hearing examiner's decision to deny emergency assistance benefits to a migrant worker because of the worker's level of income cannot be supported by substantial evidence on the whole record where the examiner clearly assumed that the income was attributable to several family members but failed to determine whether portions of the income should be disregarded pursuant to statute and, if so, how much (42 USCA 602[a] [8] [A] [i]; 45 CFR 233.20[a] [3] [iii]).

4. ADMINISTRATIVE LAW—FINDINGS OF FACT—CONCLUSIONS—STANDARD OF REVIEW.

   The Court of Appeals may not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views; however, a hearing examiner's conclusion may be reversed where it conflicts with the examiner's own findings.

REFERENCES FOR POINTS IN HEADNOTES

[1] 70 Am Jur 2d, Social Security and Medicare § 10 *et seq.*

[2, 3] 2 Am Jur 2d, Administrative Law § 691.

[4] 2 Am Jur 2d, Administrative Law § 614.

Appeal from Ingham, James T. Kallman, J. Submitted May 3, 1977, at Lansing. (Docket No. 27305.) Decided July 6, 1977.

Application by Juan Lopez to the Michigan Department of Social Services for emergency assistance benefits. Benefits denied. Plaintiff appealed to the circuit court, which affirmed. Plaintiff appeals by leave granted. Reversed and remanded.

*David W. Sinclair,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone, Thomas R. Wheeker,* and *William K. Basinger,* Assistants Attorney General, for defendant.

Before: DANHOF, C. J., and R. B. BURNS and E. A. QUINNELL,* JJ.

DANHOF, C. J. Plaintiff is a migrant farm laborer. He appeals by leave granted from a decision of the circuit court affirming defendant's denial of emergency assistance to plaintiff.

Plaintiff sought emergency assistance to meet medical and hospital bills incurred when his son, Juan, Jr., was injured in an accident while driving the family truck on July 28, 1973. Plaintiff filed his application for emergency assistance with the Department of Social Services on August 9, 1973, and listed as residing with him his wife and four children, Juan, Jr., age 18, Armando, age 20, Raul, age 16, and Esther, age 10. In the space provided for a statement of family employment and income, plaintiff wrote "4 workers $200.00", without specifying the period for such earnings or allocating the income among the four workers. At that time,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

department regulations provided that a migrant family of six could qualify for emergency assistance only if the income level of the family was less than $314.70 per month, after deductions for income and social security taxes and employee expense allowance, and disregarding certain income attributable to members of the family who were either full-time students or under the age of 14.

Finding plaintiff's income statement ambiguous, the department sought employer verification and, after repeated attempts to contact the employer failed, the department sent an income verification form to plaintiff's employer September 17, 1973. On September 24, 1973, the department received from plaintiff's employer a verification of employment form attributing to plaintiff gross earnings of $915.29 for the period in question.[1] On September 27, 1973, the department denied plaintiff's application because his income after deductions, as reflected in the employer's verification form, was $418.70 in excess of the maximum allowable.

Plaintiff speaks little or no English. On October 8, 1973, accompanied by a Ms. Lopez (unrelated to plaintiff), an employee of United Migrants for Opportunity who was to serve as his interpreter, plaintiff met with his assistance payments worker to discuss the denial of benefits. The payments worker gave Ms. Lopez a Fair Hearing Request form, but Ms. Lopez indicated that she wished to discuss the denial with others in her office before plaintiff filed the hearing request.[2] Plaintiff's attor-

[1] Apparently it is common practice among growers to simplify their bookkeeping by keeping records of wages paid in the names of the heads of the migrant families they employ.

[2] It appears that Ms. Lopez did not pursue the matter and that she left her position at United Migrants for Opportunity shortly thereafter. The hearing request form was found in her desk by plaintiff's attorney. The hearings examiner found that the reasons for the denial "were not correctly conveyed to the petitioner", and that there was a "complete breakdown in communications".

ney thereafter filed a written hearing request on October 18, 1973. On the same day, plaintiff and his family returned to Texas.

On November 30, 1973, after some delay occasioned by the uncertainty of the payments worker as to whether plaintiff's counsel in fact represented plaintiff, a hearing was held before an administrative law judge. Plaintiff's counsel introduced in evidence a statement by plaintiff's employer, transcribed by plaintiff's counsel, to the effect that the income verification form that he had sent to the Department erroneously attributed the earnings of from three to five family members (the number employed apparently varied during the period in question) solely to Juan, Sr. This evidence was received without objection,[3] and plaintiff's counsel subsequently obtained an affidavit from plaintiff's employer allocating the gross income attributed to Juan, Sr., in the original verification statement equally among four members of the Lopez family.

On appeal plaintiff raises numerous claims with regard to various alleged defects in the proceedings below that are said to have resulted from delays caused by defendant. Plaintiff also raises a number of claims not advanced below. It is unnecessary to consider these claims, even if we could do so on this record. It is apparent that some of the

---

[3] Because this statement was admitted without objection, and was apparently considered by the hearings examiner, no evidentiary question is presented. We note, however, that under 1969 AACS R 400.905(6) evidence not admissible in a civil case heard in circuit court may be admitted in administrative hearings "if it is the type commonly relied upon by reasonably prudent men in the conduct of their affairs". The statement provided by plaintiff's attorney, having been obtained in a manner similar to the employment verification information commonly relied upon by the department, appears to satisfy this requirement. *See, e.g.,* MDSS Migrant Staff Instructional Manual Item 202, pp 12, 18 (Rev. 8-13-76) providing for "collateral contact" by telephone to determine applicant eligibility and for grower verification of migrant earnings by telephone.

delays of which plaintiff now complains are attributable to plaintiff, some to the department, and some to the poor communications and resultant confusion caused by plaintiff's inability to speak English and his caseworker's inability to speak Spanish. In light of our disposition of this case, it is sufficient to quote with approval from the hearing examiner's opinion, in which, after affirming the decision to deny emergency assistance, she said:

"It is the further recommendation of the Hearings Examiner that the department excercise [sic] diligence in obtaining necessary verification of information essential to eligibility, such as earnings for migrants[,] and that request[s] for hearings be scheduled as quickly as possible to insure the presence of the petitioner."

We confine our decision to reverse and remand for a new hearing to the narrow grounds apparent on the face of the hearing examiner's opinion, which was adopted by the director in his order denying emergency assistance:

"With respect to the computations of petitioner's eligibility for emergency assistance, the Hearing[s] Examiner has review[ed] the budget (County Exhibit #4) based on earnings information provided by petitioner's employer (County Exhibit #2) and finds that the computations are essentially accurate. The main difficulty is that there has been no breakdown of the wages of each member of the family in order to determine whether any earnings should be excluded because they were those of a child under fourteen, and whether or not any additional taxes and expenses of employment should be deducted from the individual earnings of each family member. It is noted that petitioner's application shows four worker[s] in the family and that all but one of the petitioner's five children are over the age of

fourteen. The statement from petitioner's employer obtained by his attorney shows that the number of workers between the months of April and October varied from three to five and using earnings for a comparable time period as shown on the County Exhibit #2, i.e. August thru September, 1973, Petitioner's Exhibit #2 shows gross earning of $1,371.42 and with applicable taxes and expenses of employment being deducted from that figure the income would still exceed need on assistance standards. Therefore the department's decision to deny assistance based on excess income must be upheld."

Thus, even though the hearings examiner accepted plaintiff's contention that the income attributed solely to Juan, Sr., was actually earned by several members of the Lopez family, she concluded that the department's decision had to be upheld. In so finding, she failed to apply, or state reasons for concluding why she could not apply, the "disregard" for earnings of children under fourteen years of age, see 45 CFR 233.20(a)(3)(iii), and the statutory "disregard" for earned income of full-time students contained in 42 USCA 602(a)(8)(A)(i):

"[T]he State agency—
"(A) Shall with respect to any month disregard—
"(i) All of the earned income of each dependent child * * * who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment, * * * ."

Armando (who was not yet 21 when plaintiff applied for emergency assistance), Juan, Jr., Raul and Esther are all shown on plaintiff's application

as full-time students living at home,[4] and defendant did not challenge the accuracy of this information at any stage of the proceedings.[5]

Once a state elects to extend aid to migrants its plan must conform to the requirements of the Social Security Act and the rules and regulations promulgated thereunder by HEW. See 42 USCA 602, 606(e); *Evans v Department of Social Services,* 22 Mich App 633, 637; 178 NW2d 173 (1970). The proper standard for appellate review of this administrative decision is prescribed by the Administrative Procedures Act, MCLA 24.306(1)(d); MSA 3.560(206)(1)(d). *Soto v Director of Department of Social Services,* 73 Mich App 263, 269; 251 NW2d 292 (1977). The APA provides:

"Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following: * * *

"(d) Not supported by competent, material and substantial evidence on the whole record." MCLA 24.306(1)(d); MSA 3.560(206)(1)(d).

In view of the hearing examiner's apparent agreement with plaintiff's contention that the

[4] Such a claim is not, as defendant contends, inconsistent with full-time *seasonal* employment, since, according to MDSS Assistance Payments Manual Item 217 (Rev. 3-21-73), a "full-time student" is "one who is enrolled and regularly attending school or training for *at least one-half of a full-time* curriculum". (Emphasis added.) See MDSS Assistance Payments Manual Item 206 (Rev. 3-1-74); 45 CFR 233.20(a)(11)(ii)(a); MCLA 400.56(c); MSA 16.456(c).

[5] Unless information provided by the applicant in his application is controverted by information obtained by the department from other sources or by means of verification requests, the client "is the primary source of information and his signed statement is the basis for determining eligibility * * * ". MDSS Assistance Payments Manual Item 201(4)(1973).

wages originally attributed to Juan, Sr. in the employment verification form sent to the department by plaintiff's employer were in fact earned by from three to five family workers, and her failure to determine whether the mandatory "disregards" applied to those earnings, and, if so, to what proportion thereof, her conclusion that even after deductions "the income would still exceed need on assistance standards" can hardly be said to be supported by substantial evidence on the whole record. On the contrary, her clear assumption that the income was in fact attributable to several family members precludes an affirmance based upon plaintiff's employer's first employment verification statement, which erroneously attributed the family's entire earnings to Juan, Sr., and which was the only "substantial evidence" that conceivably could have supported the hearing examiner's decision. *Cf. Soto, supra,* at 271–272. Since the hearing examiner's conclusion conflicts with her own findings, this Court does not overstep its function in reversing the department's decision. See *Soto, supra,* at 272. We recognize that we may not "invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views". *Michigan Employment Relations Commission v Kleen-O-Rama,* 60 Mich App 61, 63; 230 NW2d 308 (1975). Here, however, we rely on the hearing examiner's own factual premises in concluding that she erred.

The procedures followed by the department in this case can hardly be said to have been designed reasonably to effectuate the mandatory income "disregards" for earnings of children under fourteen and full-time students. Mindful of the fact that some of the earnings attributed to plaintiff were in fact attributable to other members of his

family to which the "disregards" might apply, the department nevertheless computed plaintiff's eligibility as if all of the earnings were his, without any attempt, at any stage of the proceedings, to obtain the evidence necessary to determine whether the "disregards" should apply. On remand, such steps shall be taken, consistent with this opinion.[6] We retain no jurisdiction.

Reversed and remanded.

---

[6] One possible reason for the hearing examiner's conclusion that the denial must be affirmed is her apparent belief, voiced on the record, that the denial was to be reviewed only in light of the evidence available to the department at the time of the original denial. This is not the case. "A party to a hearing shall have an opportunity: (a) To present and establish facts and evidence relevant to the issue." 1969 AACS R 400.905(4)(a). Under subsections (1) and (2) of that rule, respectively, the hearings examiner is empowered to grant an adjournment for good cause or, in the absence of material witnesses, a continuance. Either party to an appeal may obtain a department subpoena "upon request and a showing of need, general relevance to the issue involved and the reasonable scope of the evidence sought requiring the attendance of witnesses * * * ". 1969 AACS R 400.903(3).