**ESTATE OF Lloyd ROBERTSON, Deceased, by his wife and Medical Assistance Representative Doranna ROBERTSON, Plaintiff and Appellant,**

v.

**CASS COUNTY SOCIAL SERVICES, Cass County Social Service Board, and North Dakota Department of Human Services, Defendants and Appellees.**

**Civ. No. 920147.**

Supreme Court of North Dakota.

Nov. 24, 1992.

Duane E. Houdek (argued), Legal Assistance of North Dakota, Bismarck, for plaintiff and appellant.

Michele G. Johnson (argued), Asst. Atty. Gen., Bismarck, for defendants and appellees.

MESCHKE, Justice.

The Department of Human Services ruled that Lloyd Robertson's available resources exceeded eligibility limits, and denied his application for medical assistance benefits. His estate appeals a district court judgment affirming the Department's decision.[1] We reverse and remand to the district court with directions to remand to the Department for further proceedings.

Lloyd Robertson was a married, 75 year-old person who was blind and incapacitated, and who entered the Bethany Nursing Home in Fargo before October 1, 1989. His wife, Doranna, who is also blind, continued to live in the community where she owned and operated "Dee's Coffee Mug," a coffee shop located in the Federal Building in Fargo.

On April 25, 1990, Doranna, with the help of a Legal Assistance of North Dakota

1. Lloyd died before the district court issued its ruling, and his estate was substituted as a party to the proceedings.

[LAND] representative, applied for medical assistance benefits on Lloyd's behalf. Doranna did not disclose her business checking account for Dee's Coffee Mug when listing the couple's assets on the application form. An eligibility specialist for Cass County Social Services discovered the account when she sent a release to the bank and found that the account had a balance of $19,966.15. Upon further inquiry, the eligibility specialist learned that the checking account balance from January 1988 through January 1990 fluctuated between $7,000 and $14,000.

The Department excluded that part of the business account it considered to be her self-employment income, but considered the remaining amount of $15,380.08 as an available, countable asset to determine Lloyd's eligibility for medical assistance benefits. This counted amount of $15,380.08, when added to the couple's other nonexcludable assets, totaled $38,009.63. This total exceeded the $25,000 maximum resource allowance in effect at the time. The Department denied the application.

The notice of denial listed "excess resources" as the reason, and it further stated that "[t]his action is based on MA Manual section 510–05–35–05 ... Business accounts are countable and treated like any other accounts." Doranna requested a hearing, claiming that "[m]y business account should not be included in determining my resource eligibility." In correspondence with the hearing officer prior to the administrative hearing, the eligibility specialist stated that the "issue being appealed is whether business accounts for the Medicaid program are countable." At the beginning of the administrative hearing, the hearing officer also noted that the sole question concerned "the proper interpretation of the law...." The hearing officer stated that "there are no facts in dispute" and that the question "has to do with the availability ... for medical assistance eligibility purposes of a business account."

At the hearing, Doranna argued that the business account should not have been considered an available resource because the Catastrophic Coverage Act of 1988, at 42 U.S.C. § 1396a(r)(2), required that the methodology used by the state for determining income and resource eligibility could not be more restrictive for the aged, blind and disabled than the methodology used under the Supplemental Security Income [SSI] program. Doranna relied on a federal regulation, 20 C.F.R. § 416.1220, that, for purposes of the SSI program, exempts property essential to self-support, including liquid resources used in conjunction with the operation of a trade or business.

The hearing officer found that Lloyd "failed to demonstrate that a checking account that the county valued at $15,380.08 was exempt from consideration as an available asset when determining [Lloyd's] medical assistance eligibility." The hearing officer reasoned:

The federal regulations relied upon by [the LAND representative] exempt property essential to self-support, but provide that "liquid resources other than those used as part of a trade or business are not property essential to self-support." There may be a separate and distinct issue here as to whether those regulations are applicable to so-called "209(b)" states such as North Dakota. However, the hearing officer finds it unnecessary to make a finding in that regard, for even if they were, the burden would be on [Lloyd] to demonstrate that the $15,380 amount was, in fact, used as part of [Doranna's] lunch stand business in order to be exempt, and no attempt was made to do that. The account was not even disclosed on the application. If [Doranna] had intended to claim that the account should be excluded, she would have reported it on the application, and then provided documentation to the county office relative to why she needs over $15,000 on hand to purchase supplies and pay bills related to the operation of a lunch stand.

Doranna appealed to the district court, arguing again that the Department could not apply more restrictive requirements than those employed under the SSI program. She also argued that, in any event, an existing provision of the North Dakota Ad-

ministrative Code, at NDAC 75–02–02–23, authorized exclusion of the business account as "property which is essential to earning a livelihood." The district court affirmed the Department's decision, agreeing with its argument that the Department could validly apply more restrictive eligibility criteria in determining Medicaid eligibility than that used in administering the SSI program. Doranna appealed.

On appeal here, neither side argues about whether the Department's eligibility requirements for medical assistance may be more restrictive than those under the SSI program. Instead, the Department now argues that, under its then-existing regulations, "business accounts are not automatically excluded as property essential to earning a livelihood," and that a business account, or part of it, may be excluded if the applicant proves that "the applicant or recipient is actively engaged in using [the property] to earn income and where the total benefit of such income is derived for the applicant or recipient's needs," the criteria stated in NDAC 75–02–02–03.1(8).[2] The Department, however, seeks affirmance because, as the hearing officer determined, Doranna failed to present any evidence to show what part of her business account was essential to earning a livelihood, and therefore, failed to meet the burden of proving an entitlement to benefits. We reject this argument.

■ Due process prescribes that the participant in an administrative proceeding be given notice of the general nature of the questions to be heard, and an opportunity to prepare and to be heard on those questions. *Hentz Truck Line, Inc. v. Elkin,* 294 N.W.2d 774, 780 (N.D.1980). Notice is adequate if it apprises the party of the nature of the proceedings so that there is no unfair surprise. *Erovick v. Job Service North Dakota,* 409 N.W.2d 629, 631 (N.D. 1987). These principles are embodied in a statutory directive:

> Whenever an administrative agency ... holds any contested case hearing upon ... the claim or request of any person, without the filing of a specified complaint, no final order may be issued by the agency until all parties in interest have been furnished with a written specification of the issues which are to be considered and determined, nor *until an opportunity has been afforded to all parties to present evidence and to be heard upon the precise issues so specified.* ...

[Emphasis added.] NDCC 28–32–08(2) (in part). Basic notions of fundamental fairness also dictate that a person challenging an agency action must be adequately informed in advance of the questions to be addressed at the hearing so that the person can be prepared to present evidence and arguments on those questions. *See Ortiz v. Eichler,* 616 F.Supp. 1046, 1063 (D.C.Del. 1985), *aff'd,* 794 F.2d 889 (3d Cir.1986); *Hardges v. Department of Social Services,* 177 Mich.App. 698, 442 N.W.2d 752 (1989). The notice must adequately specify "the

---

**2.** Many of the regulations that the parties now agree apply to this case were repealed effective December 1, 1991. Some of them appear to have been reenacted in slightly different form in NDAC Chapter 75–02–02.1.

The applicable part of NDAC 75–02–02–23 said:

> *Excluded property resources.* The following types of property interests will be excluded in determining if the available resources of an applicant or recipient exceed resource limits:
> 1. Property which is essential to earning a livelihood;

NDAC 75–02–02–03.1(8) defined "property which is essential to earning a livelihood" as property which the applicant or recipient owns, and which the applicant or recipient is actively engaged in using to earn income and where the total benefit of such income is derived for the applicant or recipient's needs. An applicant or recipient is actively engaged in using the property if that individual contributes significant current personal labor in using the property for income-producing purposes. The payment of social security taxes on the income from such current personal labor is an indicator of the active use of the property. ...

A "property resource" includes "any kind of property or property interest, whether real, personal, or mixed, and whether or not presently vested with possessory rights." NDAC 75–02–02–03.1(9).

The part of Doranna's business checking account that the Department excluded as her self-employment income was not a compilation of the amount of the account which is essential to earning a livelihood.

issues which are to be considered and determined."

■ Here, the record shows that from the time the Department gave its initial notice of denial, through the completion of the administrative hearing, everyone concerned, including the hearing officer, considered the sole question in this case to be one of law, that is, whether business accounts in general are includable in determining eligibility for medical assistance. In its notice of denial, the Department bluntly, and, as it turned out, misleadingly informed Doranna that "business accounts are countable and treated like any other accounts."

There is no qualification of that statement in the notice. Doranna replied in her request for a hearing that the business account should not be included in determining resource eligibility. At the beginning of the hearing, the hearing officer noted that no facts were in dispute and that the question concerned "proper interpretation of the law." Only when the hearing officer denied Doranna's appeal because she had failed to present evidence "to demonstrate that the $15,380 amount was, in fact, used as part of [Doranna's] lunch stand business," was Doranna informed that this had become an issue in the proceeding and that she needed to present evidence on the question. Where the Department framed its position in the notice of denial as a blanket inclusion of business accounts in assessing eligibility, and the parties contested the validity of the Department's blanket inclusion of business accounts throughout the administrative proceedings, Doranna cannot be faulted for failing to present evidence to bring her business account into a now-acknowledged exception to that rule.

■ The Department argues that Doranna had adequate notice that a business account is excludable, if it can be shown that the funds are "essential to earning a livelihood," because the notice of denial stated that the Department's decision "is based on MA Manual section 510–05–35–05...." Apparently, this is a reference to the Department's in-house Medical Assistance Manual. Although each county social service board has a manual, we are informed that this manual is not publicly available in libraries. A copy of 510–05–35–05 was not included with Doranna's notice of denial, nor is it in the record on appeal. Doranna's counsel asserts that 510–05–35–05 relates to "general asset considerations." The record includes a copy of part of 510–05–35–05–15, relating to excluded assets, but this first appeared as an exhibit attached to Doranna's district court brief. The notice makes no reference to applicable federal or state regulations. Under these circumstances, we believe that the Department's oblique reference to a section of an in-house "manual" not available to the general public is not adequate notice of any reason for the denial of a medical assistance application.

■ When we review an administrative decision, we must affirm unless we find, among other things, that the provisions of NDCC Chapter 28–32 have not been complied with in the proceedings before the agency, or that the agency's rules or procedure have not afforded the appellant a fair hearing. NDCC 28–32–19(3) and (4). Because Doranna was given a deficient and misleading notice of the reason for denial of her application, she was not given a meaningful opportunity to present evidence on the precise question relied on by the Department to ultimately reject her appeal. *Skjonsby Truck Line, Inc. v. Elkin*, 325 N.W.2d 271, 274 (N.D.1982); *Hardges.* Therefore, we conclude that Doranna was not afforded a fair hearing.

We reverse the judgment of the district court and remand the case with directions to remand to the Department for the purpose of allowing Doranna an opportunity to present evidence to show the amount of her business checking account that is excludable under the applicable regulations for assessing eligibility for medical assistance benefits.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and JOHNSON, JJ., concur.