Eugene **BARNETT,** Claimant and Appellant,

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES** and **Burleigh County Social Service Board, Respondents and Appellees.**

Civil No. 950386.

Supreme Court of North Dakota.

June 27, 1996.

Duane Houdek (argued), of Legal Assistance of ND, Bismarck, for claimant and appellant.

Candace Ann Prigge (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for defendants and appellees.

MESCHKE, Justice.

We decide that someone who faces loss of food stamps must be allowed during the agency hearing to urge, even for the first time, the reasons why the agency should not cut off benefits. Eugene Barnett appealed from a judgment affirming a decision of the Department of Human Services stopping Barnett's food stamps for two months because he did not attend a scheduled employment orientation. We conclude the Department denied Barnett a fair hearing when it refused to consider the evidence he offered on his claim of a medical disability for exemption from attending the orientation. We reverse and remand with directions to remand to the Department for further proceedings.

In 1964 Congress enacted a food stamp program to increase the food-purchasing power of low income people to provide them more nutritious diets. 7 U.S.C.A. § 2011. Food stamps are administered under a complex system of federal and state regulations.

A recipient of food stamps who is not specifically exempted must register for work. 7 CFR 273.7(a). A person who registers for work must participate in an employment and training program if assigned by the state agency, and a failure to comply with the training requirements results in a two-month disqualification from benefits. 7 CFR 273.7(e), (f), and (g); NDAC 75–02–11–13(2) and 75–02–11–19(1). However, a person with disability, illness, or other good cause is exempt from the work and training requirements. 7 CFR 273.7(b) and (e); NDAC 75–02–11–14(2). Under NDAC 75–02–11–02, eligibility for food stamps, unless otherwise specified, is governed by the federal food stamp regulations and procedures.

Barnett, a homeless person with severe drug and alcohol addictions, applied for food stamps at the Burleigh County Social Service offices on November 30, 1993. He was there informed about the work registration requirements, including the requirement he participate, unless exempted, in the Basic Employment Skills Training (BEST) program. Barnett gave the interviewer a note from his doctor saying he had a temporary disability and should be excused from the work requirements for three to four weeks. Barnett was certified to receive food stamps and, when the certification period expired, he reapplied for food stamps on March 3, 1994.

He was again informed of the work requirements and that he participate in the BEST program. He was told that he must attend an employment communication orientation on March 14, 1994, that was later rescheduled for March 21, 1994. Barnett did not attend.

The Department sent Barnett a "BEST NON–COMPLIANCE CONCILIATION NOTICE" giving him 30 days to arrange to attend another orientation or to explain why he did not attend the scheduled one. Barnett did not respond and, on April 29, 1994, the Department sent him a "BEST ADVANCE CLOSING NOTICE" that he would be disqualified from receiving food stamps for two months for his failure to comply with the employment training requirements. On May 13, 1994, the Department sent Barnett a "BEST NON–COMPLIANCE CLOSURE" notice that his food stamps would be discontinued the last day of May 1994. On May 31, 1994, in writing, Barnett timely requested a fair hearing. NDAC 75–02–11–25(3). He wrote, "I should be exempt from participating in the BEST program. I am requesting an in-person hearing."

The hearing was held on August 29, 1994, before an administrative hearing officer. Barnett attended with a legal aid lawyer, and offered medical evidence of disability and addictions that he claimed exempted him from the work orientation because of his physical and mental impairments. In a written memorandum, the hearing officer recognized that regulations exempt a food stamp recipient from work and training requirements for a medical disability. *See* NDAC 75–02–11–14 and 7 CFR 273.7(b). However, the hearing officer agreed with the Department's argument that Barnett's medical evidence of disability should not be considered because Barnett made no offer of evidence or claim of exemption during the conciliation period before the hearing.

The hearing officer made detailed findings, conclusions, and a recommendation that Barnett be disqualified from receiving food stamps for two months for failing to comply with the work orientation requirement. The Department's executive director accepted the hearing officer's findings and recommendation, and confirmed the decision to disqualify

Barnett from food stamps for two months. Barnett appealed, and the district court upheld the Department's decision. Barnett then appealed here.

■ We review the decision of the agency, not the decision of the district court. *S.N.S. v. North Dakota Dep't of Human Services,* 474 N.W.2d 717 (N.D.1991). *Estate of Robertson v. Cass County Social Services,* 492 N.W.2d 599, 603 (N.D.1992), explained that, when we review an agency decision, we must affirm unless we find, among other things, that the directions of NDCC Ch. 28–32 have not been complied with in the proceedings before the agency, or that the agency's rules or procedures have not afforded the appellant a fair hearing.

■ Barnett argues he was denied a fair hearing because the Department refused to consider his evidence of medical disability. He asserts the Department had no right to ignore his medical evidence solely because he presented it for the first time at the hearing. The Department argues the scope of the hearing was "limited to the propriety of the finding of noncompliance" and Barnett's medical evidence of disability was too late because he did not present it or claim an exemption before requesting a hearing. We believe the Department too narrowly defines the scope of the fair hearing that Barnett was entitled to under the state and federal regulations.

■ A fair hearing is available to any food stamp recipient aggrieved by an agency action suspending or terminating benefits. NDAC 75–01–03–03 and 75–02–11–25. The Department's regulation defines "fair hearing" to mean a hearing under federal law "that specifically requires the department to provide a dissatisfied claimant an opportunity for a hearing that meets the requirements for due process of law imposed under *Goldberg v. Kelly,* 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970)." NDAC 75–01–03–01(10). The standard for a fair hearing established in *Goldberg* requires a full opportunity to present arguments and evidence why a proposed termination of benefits should not take place:

"The fundamental requisite of due process of law is the opportunity to be heard." ... The hearing must be "at a meaningful time and in a meaningful manner." .... In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.

\* \* \* \* \* \*

The opportunity to he heard must be tailored to the capacities and circumstances of those who are to be heard. It is not enough that a welfare recipient may present his position to the decision maker in writing or secondhand through his caseworker.

\* \* \* \* \* \*

*[T]he decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing.*

*Goldberg v. Kelly,* 397 U.S. 254, 267–271, 90 S.Ct. 1011, 1020–1022, 25 L.Ed.2d 287 (1970) (Citations omitted and emphasis added). Under NDAC 75–01–03–03.1, a person facing loss of benefits must be given an opportunity at the fair hearing to "present the case," "establish all pertinent facts and circumstances," and "advance arguments without undue interference."

A full evidentiary hearing is required, and it is not limited in scope to a mere review of a staff decision. The Department has not cited any rule or regulation that compels an aggrieved food stamp recipient to first argue and present evidence against cutting off benefits to Department staff in order that he may do so at his "fair hearing." The regulations direct that the hearing must fit the *Goldberg* due process principles. *Goldberg* requires a full and effective opportunity to make arguments and to present evidence for keeping benefits.

The Department's informal 30–day conciliation period "is to determine the reasons for the participant's noncompliance and to provide an opportunity for compliance before issuance of a basic employment skills training program advance closing notice." NDAC 75–02–11–18. If the recipient does not respond during the 30–day conciliation period, the county is authorized to issue an advance closing notice telling the recipient benefits will be terminated for a two-month period. NDAC 75–02–11–18(5). The regulations also suggest an "agency conference" to informally resolve a dispute outside the fair hearing process. NDAC 75–02–11–24. The agency conference, like the conciliation process, is "optional and does not delay or replace the fair hearing process." NDAC 75–02–11–24. These informal processes are undoubtedly convenient ways to try to resolve disputes before the fair hearing process, but they do not replace the recipient's right to a fair hearing. A recipient who does not participate in these informal processes is not limited by any Department rule from presenting his full case at the fair hearing.

The scope of an agency fair hearing was the subject of our decision in *Falcon v. Williams County Social Service Bd.,* 430 N.W.2d 569 (N.D.1988). Falcon applied for medical assistance in 1986, but he did not then inform the board he retained a life estate in real property. When the board discovered the life estate, the board valued it at $6,488.51, and then terminated Falcon's benefits for exceeding the maximum resource limit of $3,000.00. Falcon requested a fair hearing, and attempted to, but could not, sell the estate for even $3,000.00. At the fair hearing, he sought to show the estate was not salable and therefore should not be counted as an asset affecting his eligibility. The Department of Human Services refused to consider Falcon's argument, because it had not been presented before the original decision to terminate his benefits. We concluded the evidence was relevant, and held there was no good reason to exclude it from consideration:

Property that is not salable without working an undue hardship is to be excluded as a property resource when determining eligibility for medical assistance benefits. Section 75–02–02–23, N.D.A.C. Falcon's evidence, therefore, was relevant to the determination made by the Williams County Social Service Board as to termination of his medical assistance benefits due to excess resources. As evidence to the effect that the life estate was not salable for $3,000 was offered and was received by the hearing officer at the evidentiary hearing provided for by law and was made a part of the official record, we find no justification for its exclusion by the Department in determining the facts and in rendering its decision.

\*　　\*　　\*　　\*　　\*　　\*

The Department has not referred us to any rule adopted pursuant to section 28–32–02, N.D.C.C., which requires the exclusion of the evidence as to salability without hardship, nor has it referred us to case law, either state or federal, that compels such an exclusion.

*Falcon,* 430 N.W.2d at 573. Although Falcon did not tell the agency when he applied for medical assistance that he owned a life estate or attempt then to establish its value, we ruled the agency must consider the evidence of nonsalability that Falcon proffered at the hearing.

The Department seeks to distinguish *Falcon* because his first opportunity to produce evidence of salability was at the hearing after the agency decided to terminate his benefits. But here, the Department argues, Barnett could have presented arguments and evidence of his exempt status from the work requirements before the fair hearing, either when he was asked to attend the employment orientation or during the conciliation period. The problem with the Department's position is that, like in *Falcon,* no statute, rule, or regulation says Barnett must present his arguments and evidence to the Department's staff before the fair hearing or lose his food stamps entirely.

To the contrary, under the Department's regulations, Barnett is entitled to present his case at the hearing where he has the right to establish "all pertinent facts and circumstances" and to advance arguments "without undue interference." NDAC 75–01–03–03.1. We are not persuaded there is a valid reason to distinguish Falcon's circumstances from Barnett's. In each case, the fair hearing was the first "formal" opportunity either of them had to present reasons and evidence to a decision maker why the agency should not terminate benefits.

An analogous circumstance was present in *Lopez v. Michigan Dep't of Social Services,* 76 Mich.App. 505, 257 N.W.2d 143 (1977). A migrant farm laborer was denied emergency assistance because his income exceeded the maximum allowed. The decision was based on erroneous information supplied to the agency by the employer. The laborer requested a fair hearing, and the hearing officer, although agreeing with the laborer that the agency had erroneously attributed income of other family members to him, upheld the initial decision to deny benefits. The hearing officer believed the denial of benefits could be reviewed "only in light of the evidence available to the Department at the time of the original denial." *Lopez,* 257 N.W.2d at 147 n. 6. The Michigan Appeals Court reversed, concluding the hearing officer erroneously limited her review to the evidence before the agency at the time of the initial decision. The court, citing the agency's regulation that a party to a hearing must be given the opportunity "to present and establish facts and evidence relevant to the issue," concluded the corrected employer information introduced at the hearing was entitled to consideration and was dispositive. *Id.; see also Hansen v. D'Elia,* 88 A.D.2d 935, 450 N.Y.S.2d 874 (1982) (public assistance recipient allowed to testify at fair hearing he missed appointment with employment service because of an injured foot, "compounded by a relapse of alcoholism," that showed good cause to annul suspension of benefits).

We conclude the Department erred in refusing to consider medical evidence submitted by Barnett to show a disability exempting him from attending the orientation. Even a disqualified recipient can reestablish eligibility and resume participation at any

time during disqualification by either complying or evidencing an exemption from a work registration requirement. 7 CFR 273.7(h). Here, the Department denied Barnett a fair hearing by limiting it to a mere review of the staff decision to terminate Barnett's food stamps, instead of an evidentiary hearing for Barnett to fully present arguments and evidence why his food stamps should not be terminated. We, therefore, reverse the judgment of the district court with directions to remand to the Department for a redetermination whether Barnett's benefits should have been discontinued. Under 7 CFR 273.15(s)(1) and 273.17, if the Department concludes termination of benefits was not correct, it must restore Barnett's lost benefits.

We reverse and remand accordingly.

MARING, J., concurs.

VANDE WALLE, Chief Justice, concurring specially.

I understand NDAC 75–02–11–18, the conciliation procedure, to be a special procedure whereby a participant in the food stamp program may explain failure to comply with the mandatory basic employment skills training program specified in NDAC 75–02–11–16(1). I believe the conciliation procedure, i.e., the opportunity to show good cause why the participant did not comply, provides adequate due process without the "fair hearing" procedure.

Due process is offered by a notice and hearing that are aimed at establishing the validity or the probable validity of the underlying claim. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *State v. One Black 1989 Cadillac*, 522 N.W.2d 457 (N.D.1994); *Garrison Memorial Hosp. v. Rayer*, 453 N.W.2d 787 (N.D.1990). The procedure envisioned by the Department complies with this concept of due process. Therefore, insofar as the majority opinion suggests that the conciliation procedure does not provide due process, I do not join the opinion.

I concur in the result, however, because the regulations adopted by the Department, and the notices [1] prescribed by the regulation, NDAC 75–02–11–18, do not inform the participant that failure to respond will limit the issues to be considered at the "fair hearing" available to the participant under NDAC 75–02–11–25. That rule incorporates by reference the procedures in NDAC Chapter 75–01–03 which defines a fair hearing as being an appeal hearing established under federal statutes and the Code of Federal Regulations and that requires the Department "to provide a dissatisfied claimant an opportunity for a hearing that meets the requirements for due process of law imposed under *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970)."

Although the conciliation process established by NDAC 75–02–11–18 may very well meet the *Goldberg* requirements for due process, the Department concedes that its regulations provide for a further hearing under NDAC 75–02–11–25, but that the hearing is limited to determining whether or not the participant complied with the requirements and, if the participant did not comply, whether or not the participant provided reason for noncompliance. Whether or not there was good cause for noncompliance is, in the Department's view, foreclosed because no response was made to the conciliation notice. This procedure seems reasonable if the participants understand they will not be permitted to explain why they didn't comply if they do not respond to the conciliation notice. But, the notice does not tell them that nor do the regulations tell them that. Rather, the regulations would lead a participant to believe that after the conciliation process there is still a "fair hearing" at which all issues will be aired.

I am aware the bureaucracy is often criticized for its cumbersome procedures and its slowness to react to human needs. However, when the bureaucracy establishes procedures to permit it to respond in a less cumbersome, more informal and, hopefully, speedier manner, it is faced with decisions such as this

---

1. The copies of the notices contained in the record are nearly impossible to read. They apparently contained instructions on the back which are not made part of the record. If the participant received no more legible a notice, that fact alone would justify reversal.

which seem to require even lengthier, more cumbersome procedures. Indeed, as policies of insurance seem to grow in reaction to court decisions, so do the bureaucracy's rules and regulations appear to become more complicated and more costly in response to our opinions.

Nevertheless, because the Department's notice and regulations do not fairly describe the procedure envisioned by the Department, i.e., that the conciliation procedure is a threshold requirement to air the reasons for noncompliance at the "fair hearing," I concur in the result reached by the majority opinion.

NEUMANN, Justice, dissenting.

Barnett had four different opportunities to present his claim of exemption to the department—at his initial application, following receipt of his BEST Non-compliance Conciliation Notice, again following receipt of his BEST Advance Closing Notice, and yet again for several days following his receipt of the BEST Non-compliance Closure Notice. Despite all of that, Barnett waited until the last possible moment and then, without elaboration, simply said "I should be exempt from participating in the BEST program."

The conciliation process provided by the department clearly afforded Barnett all the due process and fair hearing opportunity required by *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). I would affirm.

SANDSTROM, Justice, dissenting.

Because I believe Barnett's evidence of physical and mental impairment exceeded the scope of the hearing, I respectfully dissent.

Barnett, an unemployed drug addict who gives his address as his car, applied for food stamps. He asserted no exemption, and specifically acknowledged he was required to attend the Basic Employment Skills Training Program (BEST) when directed, and to seek and accept suitable employment.

Barnett's benefits were suspended because he failed to comply with the work requirements, and he did not have "good cause" for that failure. 7 CFR § 273.7(g)(1)(i). "Good cause" for failing to comply with the work requirements includes "circumstances beyond the member's control, such as, but not limited to, illness, illness of another household member requiring the presence of the member, a household emergency, the unavailability of transportation, or the lack of adequate child care." 7 CFR § 273.7(m).

The purpose of the hearing was to determine whether Barnett had a valid reason for missing the scheduled BEST appointment. Rather than address that issue, Barnett contested the issue of whether he should be required to participate in the BEST program at all.

Our Administrative Code provides: "'Fair hearing' means an appeal hearing, established pursuant to ... 42 CFR part 431, subpart D ... or any other federal law or regulation that specifically requires the department to provide a dissatisfied claimant an opportunity for a hearing that meets the requirements for due process of law." N.D.Admin.Code 75-01-03-01(10). 42 CFR § 431, subpart D provides the complaining party is afforded "[a]n opportunity for a full evidentiary hearing *on the issue of the noncompliance that led to the imposition of enforcement actions ...*" 42 CFR § 431.153(f)(2) [emphasis added]. The noncompliance here was failure to participate in the BEST program, which Barnett had acknowledged he was required to attend when directed.

The agency properly found that Barnett did not show good cause for missing the BEST appointment, and properly suspended his benefits. Barnett's ineligibility for benefits then continues until he becomes exempt from work registration through mental or physical impairment, "or for two months, whichever occurs earlier." 7 CFR § 273.7(g)(1)(i).